Jones, J.
(dissenting). We would reverse the order of the Appellate Division and reinstate the determination of the State Liquor Authority. In so doing, however, we would reduce the penalty imposed from a 10-day suspension to a $1,000 bond claim.
We take this occasion to state our analysis and views in cases in which the charge is made that a licensee has violated subdivision 6 of section 106 of the Alcoholic Beverage Control Law. That subdivision provides in pertinent part: “ No person licensed to sell alcoholic beverages shall suffer or permit any gambling on the licensed premises ”. (Emphasis added.)
Violation of this subdivision is not established by proof alone that gambling has taken place on the licensed premises. (Compare, for instance, the prohibition against sale of liquor to a minor under section 65, in which instance proof of the fact of a sale to a minor without more constitutes a statutory violation.) In our view the verbs “ suffer ” and “ permit ” each connote an element of knowledge or awareness on the part of the licensee, proof of which is an essential element if violation of the statute is to be made out. (Matter of Migliaccio v. O’Connell, 307 N. Y. 566.) As Judge Cabdozo put it in another *88 context, ‘ ‘ ‘ Sufferance as here prohibited implies knowledge or the opportunity through reasonable diligence to acquire knowledge. This presupposes in most eases a fair measure at least of continuity and permanence ’ ”. (People ex rel. Price v. Sheffield Farms-Slawson-Decker Co., 225 N. Y. 25, 30.) On our analysis the predicate knowledge may be found in any one of three cognitive concepts — knowledge, constructive notice, or imputed knowledge or notice.
Clearly, if in addition to proof that gambling took place, it is established that the licensee himself with knowledge thereof did not act immediately to terminate the gambling, there can be no doubt that the statute has been violated.
In the second category — that of constructive notice — if the proof that there was gambling is accompanied by substantial evidence that the licensee, although he had no knowledge of the gambling, was present and should have had knowledge of the gambling, we would conclude that he was sufficiently implicated to support a determination that the statute had been violated. That the licensee should have known of the gambling might be established by either of two lines of proof; in either case, as Judge Cabdozo stated, there must be at least some proof of continuity or frequency. On the one hand, the physical characteristics of the licensed premises might be such that the licensee could realistically and fairly be charged with notice of what his customers were doing in his presence while they were on his premises — where, for instance, there was at all times unobstructed vision of the area or areas in which the gambling occurred. On the other hand, even if the characteristics of the premises or the manner or circumstances of the particular form of gambling were such as to make direct visual observation unlikely or improbable, we would still find the requisite constructive notice if the licensee would have discovered the gambling had he discharged his duty of oversight with responsibility to know what was taking place on the premises. Where there was proof of several instances of gambling by patrons, even if they occurred in circumstances in which it could not be said that there was an opportunity for direct observation, it might be found that, had the licensee used reasonable efforts to keep informed of what was taking *89 place on Ms premises, notice of the gambling activity would have come to his attention.
Thus, we would hold that violation of the statutory prohibition could properly be predicated on a finding that a licensee who was personally present had either knowledge or constructive notice of the gambling.
In the third category fall instances of knowledge or constructive notice imputed to the licensee even though he is not personally present. Here if a manager or a person in charge with managerial or supervisory responsibilities* could properly be charged with knowledge or with constructive notice of the gambling, such knowledge or notice without more should be imputed to the licensee. This would be so irrespective of the total absence of any notice, actual or constructive, to the licensee individually. Such a result would be based on the principle that such manager or person in charge, having been chosen by the licensee and the responsibilities of the licensee having been delegated to him, should be considered the alter ego of the licensee. For the purposes of the statute knowledge or notice of such manager or person in charge would accordingly be deemed to be that of the licensee.
A word remains to be said of the case in which the proof shows that an employee of the licensee was engaged in the gambling activity. If the gambler were the licensee himself, and therefore, of course, had knowledge of the gambling, proof of the statutory violation would be conclusive. If the gambler were a manager or a person in charge with managerial or supervisory responsibility, the consequences would be the same, with the knowledge of his alter ego imputed to the licensee. The pragmatic fact that the licensee individually might not realistically be expected to have received notice from his offending manager of the latter’s gambling activities would make no difference; the imputation would be absolute. If, finally, it were an employee other than a manager or a person in charge with managerial or supervisory responsibility who was engaged in the gambling, the case should then be viewed as though the gambler were a customer, and if under applicable *90 principles of knowledge or constructive notice, together with those of imputed knowledge or notice, the licensee was chargeable with knowledge or notice of the employee’s gambling activity, there would then be a statutory violation. Additionally, if in the absence of knowledge or constructive notice it were shown that, had it not been for derelictions on the part of the licensee or his agent in screening the particular applicant for employment, the gambling propensities of the employee would have been revealed, a violation of the statute might then also be found to have occurred.
Coming then to the present case, while perhaps we would not have found such constructive notice on these particular facts as to constitute a violation were we to have made the initial determination, we must conclude that there was substantial evidence in this record to support the determination made by the Authority. Clearly there was evidence to support a finding that there had been gambling at 198-20 Linden Boulevard by the same patron on each of three occasions, December 7, 8 and 11, 1971. Then the photographs of the licensed premises introduced in evidence disclose that all portions normally occupied by patrons were directly visible from behind the bar. A bartender was in charge on each of the three December dates, and the licensee himself was on the premises on the 11th. In this state of the record we would conclude that there was substantial evidence to support the determination by the Authority of statutory violation based on the principle of constructive notice to a person in charge with managerial or supervisory responsibilities, to be imputed in turn to the licensee. Constructive notice to the bartender here could have been based on the ground that had he exercised reasonable care to observe what was taking place on the licensed premises he would have seen the patron’s gambling in consequence of his own direct observation; or, if not that, at the very least he should have made it his business to know what was occurring on the premises and had he done so the gambling activity would then have come to his attention.
The respondent licensee has placed great emphasis on our recent decision in Matter of Triple S. Tavern v. New York State Liq. Auth. (31 N Y 2d 1006). In our view such reliance is mis *91 placed. The gambler in that case was an employee of the licensee who this court concluded was not a manager and had not been given either managerial or supervisory responsibilities. She was merely on duty, taking and filling orders, for short periods of time while the licensee, a sole proprietor, was briefly off the premises. In the somewhat unusual circumstances of that case, while the employee obviously had knowledge of the gambling, her knowledge could not properly be imputed to the licensee. There was no basis for holding the licensee personally on the theory of constructive notice, or on the ground that a proper screening of the employee on application for employment would have disclosed her disposition to gamble.
Turning then, briefly, to the issue of the penalty imposed, a matter not reached at the Appellate Division or by the majority in this court, we would reduce the penalty as indicated. With Judge Stevens in his recent opinion in Matter of Pell v. Board of Educ. (34 N Y 2d 222) we would distinguish in part between cases involving matters of internal discipline within an administrative agency (as typically in the case of a municipal police department) and those cases in which, as here, an administrative agency is imposing penalties on members of the public over whom it has regulatory authority. The standard of review would be precisely the same, namely, was there an “ abuse of discretion as to the measure or mode of penalty or discipline imposed ”? (CPLR 7803, subd. 3.) In the former class of cases, however, we would accord' a somewhat broader range to the scope of administrative discretion. In matters of internal discipline the administrative official or agency possesses not only a special capability and competence which are not necessarily always to be found in the courts, but also an awareness and comprehension of the complexities and sensitivities of personnel administration in continuing intra-organizational relationships which make it all the more important that the courts exercise restraint in intrusion into matters involving internal discipline and morale.
In some contrast, the same considerations do not obtain as to judicial review of matters of external regulation. While recognizing, of course, the experience and the peculiar competence of the State Liquor Authority in the regulation of the activities of its licensees in the public interest, nonetheless *92 factors of both individual and comparative fairness and evenness among the licensees as a group weigh more heavily.
So viewing the penalty determined in this case, we would find the imposition of a 10-day suspension on this respondent an abuse of discretion. The record here discloses that this licensee had operated his premises for a period of over three years without criticism. The premises are located in a potentially troublesome area and a license was issued to respondent in September, 1968 with the understanding that as the new licensee he would keep it free from gambling. He took steps to replace two enclosed telephone booths with a single, exposed wall-mounted telephone. The record discloses no suggestion that there had been any gambling on the premises for nearly 39 months. In the December, 1971 episodes the licensee, although present on the last occasion, was not otherwise personally involved; the violation was based on notice imputed to him. Appellant makes only a general conclusory recital that “ [g]reater penalties have been sustained in the past for like violations ”, and points to no special factors to justify the particular exercise of disciplinary discretion in this case.
In these circumstances, we would accordingly hold the imposition of the 10-day suspension an abuse of discretion and reduce the penalty to a $1,000 bond claim. As so modified, we would reinstate the determination of the State Liquor Authority.
Judges Wachtleb, Rabin and Stevens concur with Judge Gabbielli ; Judge Jones dissents and votes to modify in a separate opinion in which Chief Judge Bbeitel and Judge Jasen concur.
Judgment affirmed, with costs.

 We would suppose that any employee left in charge of the licensed premises would normally have such responsibility.